**Mr. and Mrs. Fred H. SCHERRER,**
Respondents,

v.

**PLAZA BOWL INVESTMENT COMPANY,**
Appellant.

No. 22123.

Kansas City Court of Appeals.

Missouri.

April 4, 1955.

Inghram D. Hook, Kansas City, for appellant.

Louis A. Silks, Jr., Kansas City, for respondents.

WEIGHTMAN, Special Judge.

This is an appeal by the defendant from an order of the Circuit Court of Jackson County, Missouri, which order sustained the plaintiffs' motion for a new trial after a verdict had been returned against the plaintiffs and in favor of the defendant in the plaintiffs' suit for the loss of a $600 fur coat from the defendant's checkroom in its bowling place.

The parties are referred to throughout this opinion as they were in the trial court.

The plaintiffs filed their petition in a Magistrate Court in Kansas City, Missouri. They alleged they were the owners of a $600 fur coat; that the defendant was a corporation known as the Plaza Bowl located at 430 Alameda Road in Kansas City, Missouri, and did business there as a public bowling alley and recreational center; that on November 21, 1950, one of the plaintiffs, Mrs. Scherrer, went to defendant's establishment to bowl and she wore her new fur coat. She placed it for storage while she bowled in a room furnished by defendant for such purposes; that defendant was therefore, they alleged, a bailee charged with reasonable care but that defendant failed to use that reasonable care and failed to return to them said fur coat to their damage in the sum of $600.

The second part of the petition, which is titled Count II, charges the defendant with carelessly and negligently permitting the coat to be stolen.

Issue being thus made, a trial in the Magistrate Court was had and resulted in de-

fendant's favor. Appeal was perfected to the Circuit Court and a jury in that court found against the plaintiffs and for the defendant.

A timely motion for a new trial was filed, and in sustaining it the court observed as follows: "For the reason that the court erred in overruling plaintiffs' request for mistrial and to discharge the jury after the defendant's counsel told the jury: 'This is a case where there is no insurance', and further erred in not instructing the jury to disregard said remark." The defendant, the Plaza Bowl, in appealing from the order of the trial court directing a new trial, raises the first point that the plaintiffs made no submissible case because: "1. Plaintiffs, having seen the defendant's sign and for failure to observe the same, cannot recover: 2. There was no bailment."

In order to determine whether the trial court should or should not have given defendant's motion for a directed verdict at the close of plaintiffs' evidence or at the close of all the evidence, it becomes necessary to review the facts.

The defendant was at all times herein a place of amusement for bowlers and operated under the name of Plaza Bowl. It was located in the Country Club Plaza on the South Side in Kansas City. There were two bowling rooms, one on the street level and the other on the terrace. In each of these were sixteen alleys for bowling, and defendant also had in connection therewith eating and drinking facilities.

In the street floor or first floor room, in addition to the sixteen bowling alleys, there was a checkroom five feet wide and sixteen feet long with about 140 hooks for clothing. Over the door at the end of this room was a sign "Checkroom". On the right of the door, immediately adjacent to the door frame which was four to six inches wide, was another sign which was at least nine inches high and eight inches wide. (Those were the estimates given by Mrs. Scherrer. The defendant said that by actual measurements the sign was thirteen inches high and eleven inches wide.) The sign and the words on it were:

"Not Responsible for ARTICLES NOT CHECKED Checking Service in the Terrace"

The bottom of this sign was five feet from the floor and could be read from ten to fifteen feet away.

The terrace room downstairs was eight feet wide and eleven feet long and there were 114 hooks for clothing on the walls in this room. There were benches and lockers also in this room for use of shoe-rental customers. A shoe-rental service was carried on from this room. Near the door to this room was another sign on which were the words "Checkroom 10 cents." There was an attendant in this room at all times to handle checking service and to rent shoes. There was also a cash register in this checkroom and the money from checking clothing was rung up separately from that received from shoe rentals. On the night involved in this lawsuit, $6.30 was taken in from the checkroom alone. There were approximately 320 people there that night, so that one out of every five availed himself of the services of the attendant in this checkroom.

One of the plaintiffs, Mrs. Fred Scherrer, was a member of a bowling team in Kansas City and had bowled in this particular Plaza Bowl for five years. On the evening of December 21, 1950, she went there to bowl and wore her new $600 gray Chinese, kidskin coat. She knew there had been no attendant in the checkroom on the first floor since September but she took her fur coat in that checkroom. She said she did not see the sign which read "Not responsible for articles not checked. Checking service in terrace," but there were, in her words, "A lot of coats in there already and I walked clear to the back and hung it so that it wasn't noticeable from outside."

Later on in the evening a thief stole some coats from that checkroom, one of which was the fur coat of Mrs. Scherrer, and when she reported that fact to the manager of the defendant company, he es-

corted her to the door and pointed out the sign. Mrs. Scherrer said she had not seen it before but was of the opinion that it was there when she went in to take her coat because in answer to the question: "Q. No one had placed the sign on that side of the door after you had been in and out with your coat, had they? A. Oh, no, no." The defendant stated that the sign had been there since January, 1946.

■ Generally speaking, a business establishment "in whose custody clothing or other articles are deposited temporarily as an incident to his general business, impliedly promises to use ordinary care in the preservation of such articles and is liable as an ordinary bailee for hire for any loss resulting from ordinary negligence. The consideration for this implied promise is the chance of profit from the patronage of the customer. The bailee, however, is not liable as an insurer of the goods; nor is he liable for a loss resulting from the contributory negligence of the customer, as, for example, where the customer does not deposit his clothing or valuables in the place provided for that purpose; * * *. Likewise, this type of bailee is only liable for articles left by customers in his establishment if they were delivered into his custody * * *." 8 C.J.S., Bailments, § 27, pp. 276, 277.

Defendant, in arguing that there was no submissible case because of contributory negligence, quotes the law of this state to be, with reference to automobile and railroad cases, that "a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law." Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, 625, 626; State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915.

It seems to us that the New York cases cited in appellant's brief are more nearly applicable. One of these cases concerns a patron who hung his coat upon a hook rather than deposit it to the exclusive possession of the landlord. The court said that while the presence of the hooks could be construed as an invitation, yet if the patron wished to deposit the coat in the exclusive possession of the landlord, he should have availed himself of the landlord's accommodations provided for that purpose. Wentworth v. Riggs, 159 App.Div. 899, 143 N.Y.S. 955.

In the other New York case, the patron hung his overcoat upon a hook in the restaurant but there was a stamped notice upon the menu that the landlord was not liable unless the property was checked with the cashier. The court held there was no bailment. Schleef v. Foodcraft, Inc., Sup., 165 N.Y.S. 209.

It is a physical fact that, when Mrs. Scherrer entered the checkroom to take her coat, on a level with her eyes and about twenty inches to the right was this sign. That she did not see it is emphasized by the fact that she walked "clear to the back and hung it (the coat) so that it wasn't too noticeable from the outside."

■ Whether the coat of the plaintiff was checked for ten cents or left in the checkroom where she left it, to recover in this action, it became necessary for the plaintiff-bailor to establish a causal connection between the loss and the bailee's negligence. McKeever v. Kramer, 203 Mo.App. 269, 218 S.W. 403.

In other words it became necessary to establish some negligence on the part of the defendant bailee. The burden was on the plaintiff-bailor to prove negligence. Casey v. Donovan, 65 Mo.App. 521; Oliver Cadillac Co. v. Rosenberg, Mo.App., 179 S.W.2d 476.

■ A bailment is a delivery of personal property in trust. Samples v. Geary, Mo. App., 292 S.W. 1066, 1068.

In this Geary case, the plaintiff checked her wraps at a dancing hall and paid ten cents for the privilege. She received a check. When she went back after her wraps, a fur piece that she had stuck in the sleeve of her coat was missing. This court said: " 'The party who is sought to be charged as bailee must accept the property, because the relation is founded upon contract, and the duty and liability springing

therefrom cannot be thrust upon one without his knowledge or consent.'" There must be a meeting of minds to make the contract valid.

In the present case, the defendant did all a reasonable person could do to tell the plaintiff that if she wanted to pay him ten cents he would receive her coat on the terrace room where he had an employee in constant attendance whose business was the watching and caring for such items of bailment. The plaintiff, Mrs. Scherrer, preferred the room where there was no charge for checking and no attendant.

■ In their oral argument and in their attorney's brief, plaintiffs urged that this is an implied bailment and that defendant-bailor had constructive notice of the fact of the bailment. It can do no harm to agree with plaintiffs on this point for the purpose of observing that even so, before a bailor can recover, negligence on the part of the bailee must be established by the bailor and this the plaintiffs failed to do.

■ Whether a bailment is for hire or gratuitous, the bailee is liable for loss of property through its failure to exercise care thereof. Levi v. Missouri, K. & T. R. Co., 157 Mo.App. 536, 138 S.W. 699.

And, ordinary care on the part of a bailee has been defined as such as a man of ordinary prudence exercises. Johnson v. Ruth, 34 Mo.App. 659.

The defendant's motion for directed verdict at the close of plaintiffs' case should have been sustained. Therefore, the other assignments of error raised by the defendant need not be passed upon in this opinion.

The action of the trial court in sustaining the motion for a new trial is reversed and the cause remanded with directions to the trial court to enter a judgment for Plaza Bowl Investment Company, defendant-appellant herein.

MAUGHMER, Special Judge, and BROADDUS, J., concur.