ROSCOE B. EVANS v. MISSOURI PACIFIC RAILROAD COMPANY, a Corporation Appellant.—116 S. W. (2d) 8.

Division Two, May 3, 1938.*

*NOTE: Opinion filed at September Term, 1937, December 17, 1937; motion for rehearing filed; motion overruled at May Term, 1938, May 3, 1938.

*Thos. J. Cole* for appellant.

*C. O. Inman* for respondent.

TIPTON, J.—This case comes to the writer on reassignment.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis, wherein the respondent recovered $15,000 for personal injuries received on August 7, 1931, at Pine Bluff, Arkansas.

I. The appellant's first assignment of error is that the "Court erred in not sustaining the demurrer either at the close of plaintiff's case or at the close of the whole case, because there was no proof of any negligence of the defendant."

The respondent sought to recover under the *res ipsa loquitur* doctrine, and also under a right of action based upon a statute of the State of Arkansas.

The respondent was standing in the intersection of Fourth and Chestnut streets in Pine Bluff, Arkansas, on the date of his injury, awaiting the passage of the appellant's freight train on the southernmost of the two tracks laid in the center of Fourth Street, intending to cross over the tracks at the intersection. The train consisted of an engine, tender, and ten boxcars, and was proceeding eastwardly. The respondent was standing at a position of about four or five feet from the eastbound tracks, waiting for the train to pass, and while standing there was looking toward the east. After the engine and several cars had passed him, he was struck about the knees by some rigid object projecting from one of the cars, as a result of which his feet were thrown out from under him. As he fell to the pavement his left foot went under the train and was so badly crushed that it was necessary to amputate it about five inches above the ankle. The respondent testified that as he fell he had a glance of the object that struck him and that it was a "bar or rod or something of that kind," that it was not a wire, and that it was rigid. He also testified that before and at the time he was struck, there was no automobile within a block of him, nor did he see anyone about him.

P. S. Cambron, one of the trainmen, testified that he was sitting on top of the third car from the rear end of the train and on the north side of the car at the time of the accident; that he saw respondent standing within three or four feet of the train with his hands close to his body; that when the fifth or sixth car from the engine was passing the respondent, he suddenly went under the engine and then rolled out again; and that respondent was not attempting to get on the train but was standing still prior to the time he fell.

■ "Where the instrumentality which causes an injury is within the control of and operated by a party, and moves or operates in such a way that such motion or operation would not have happened except for some defect or negligent act, and injury to some person results, then the doctrine of *res ipsa loquitur* applies, and a plaintiff suing for an injury so caused has only to show control of the instrumentality by the defendant and its usual movements. It is then for the defendant to explain, if it can, the casualty, so as to exclude negligence on its part. [Ash v. Woodward Printing Co., 199 S. W. l. c. 997; Blanton v. Dold, 109 Mo. l. c. 75; Thompson v. Railroad, 243 Mo. 336, l. c. 354; Gibler v. Railroad, 148 Mo. App. 475, l. c. 484.]" [Mayne v. Kansas City Railways Co., 287 Mo. 235, l. c. 248, 229 S. W. 386.]

■ "Our court has held that the burden of proof never shifts and that the presumption raised by the doctrine *res ipsa loquitur*, relating as it does to the burden of proof, remains in the case to the

end and will take the case to the jury, notwithstanding the evidence, however probative, given in rebuttal on behalf of the defendant." [State ex rel. Kurz v. Bland et al., 333 Mo. 941, l. c. 947, 64 S. W. (2d) 638.] [See, also, Roscoe v. Met. St. Ry. Co., 202 Mo. 576, 101 S. W. 32; Price v. Met. St. Ry Co., 220 Mo. 435, 119 S. W. 932; Bond v. St. L.-S. F. Ry. Co., 315 Mo. 987, 288 S. W. 777; Conduitt v. Trenton Gas & Elec. Co., 326 Mo. 133, 31 S. W. (2d) 21; Bartlett v. Pontiac Realty Co., 224 Mo. App. 1234, 31 S. W. (2d) 279; Rockenstein v. Rogers, 326 Mo. 468, 31 S. W. (2d) 792; Hartnett v. May Dept. Stores Co., 85 S. W. (2d) 644; Williams v. St. L.-S. F. Ry. Co., 337 Mo. 667, 85 S. W. (2d) 624; Noce v. St. L.-S. F. Ry. Co., 337 Mo. 689, 85 S. W. (2d) 637.]

In the case at bar, we find from the evidence that the respondent was standing in the intersection of two streets in the city of Pine Bluff, Arkansas, three or four feet from a moving freight train operated by the appellant. The jury had a right to infer that he was standing a safe distance from the train as the engine and several cars had passed with safety to him. Suddenly he was struck by a "rod or bar or something of that kind" projecting out from one of the cars, which the jury had a right to infer was attached to the car. The train was under the exclusive control of the appellant and if it had not been for the rod or bar projecting from the car, the train would have passed him safely. Under the rule above stated, we think this makes a *prima facie* case for the respondent, as under the circumstances an inference of fact arises showing negligence. If it had not been for the unusual occurrence of the bar or rod extending out from the car, the accident would not have taken place. In other words, the injury would not have happened had due care been taken by the appellant, as the train and the rod or bar projecting from one of the cars was under the control of the appellant. Nor is this inference of fact dispelled as a matter of law by proof on the part of the appellant, regardless of how probative that proof of lack of negligence might be. The question of negligence was for the jury to decide.

In the case of Burns v. United Railways Co., 176 Mo. App. 330, 158 S. W. 394, the St. Louis Court of Appeals permitted a recovery where the plaintiff was struck by some object attached to a passing street car. That court held the jury had a right to infer that the object had some connection with the street car. In Noce v. St. Louis-San Francisco Ry. Co., supra, we held that a section laborer, struck and killed by a metal hub liner thrown from a passing engine, made a case under the *res ipsa loquiter* doctrine.

The appellant relies upon our case of Gallagher v. St. Louis Public Service Co., 332 Mo. 944, 59 S. W. (2d) 619. In that case the plaintiff, as he passed behind a standing street car, stepped upon

a wire or rope that was attached to the car and, as the car started, was thrown to the pavement and injured. We held that, as the plaintiff's evidence failed to show either by direct testimony or reasonable and legitimate inference from the established circumstances that the dragging object was some part of the car or something pertaining to the car, the *res ipsa loquitur* doctrine did not apply. That case is distinguishable from the case at bar in that a jury could infer that the rod or bar projecting from the car that struck the respondent was some part of that car.

Also, the case of Hawthorne v. Texas & N. O. Ry. Co., 84 S. W. (2d) 1015, decided by the Court of Civil Appeals of Texas, is not in point because it is a case in which the plaintiff pleaded specific negligence.

We will not lengthen this opinion by discussing the other cases cited by the appellant, but we have examined them and find they are not in point.

We hold that the respondent made a submissible case under the *res ipsa loquitur doctrine,* and therefore the demurrers to the evidence were properly overruled. For that reason it becomes unnecessary for us to decide if the respondent made a case under the statutes of the State of Arkansas.

II. The appellant's next assignment of error is that the "Court erred in allowing the professional witness, Dr. Miller, to inject into the case the fact that this man was suffering from anemia, heart trouble, and had financial worries, and by not declaring a mistrial because of the improper injection of these matters into the case."

The appellant's motion to strike this testimony from the record was overruled, but later, in the course of the trial, the court struck out this evidence and instructed the jury to disregard it. It is the appellant's contention that, even though the court ordered this testimony stricken out, the error was not cured nor the damage removed.

"The instruction of the court to the jury to disregard the evidence erroneously admitted is ordinarily sufficient. 'To hold otherwise would be to establish the rule of practice that when a court made a mistake and admitted incompetent testimony, and afterwards discovered that it had done so, it could not effectively correct the error by instructions to the jury, but that in order to remove the sting of the error it would have to discharge the jury and award a new trial before a new venire. Such a rule could not reasonably be expected to be announced by any court. When a trial court becomes satisfied that it has erred in the admission of testimony, all that it can do is to instruct the jury to disregard it,

and the presumption is that the jury did disregard it.' [Harrison v. K. C. Electric Light Co., 195 Mo. 606, 635, 93 S. W. 951, 960, 7 L. R. A. (N. S.) 293.]'' [Grott v. Johnson, Stephens & Shinkle Shoe Co., 2 S. W. (2d) 785, l. c. 788.]

■ The appellant also contends that Dr. Miller was allowed to recite at great length the alleged history of respondent's ailments. The records show that the physician's testimony did not refer to the history of respondent's sufferings, but only to complaints of his sufferings on the date of the examination.

In the case at bar, Dr. Miller did not detail any statements he received from the respondent other than those stricken from the record by the trial court. He did, however, tell what the respondent told him about his then present condition.

While not clearly stated in its brief, we gather that the appellant's chief objection to the testimony of Dr. Miller as to the present complaints of the respondent was the fact that Dr. Miller examined the respondent solely for the purpose of testifying in this case.

A physician may testify as to present symptoms or complaints of a patient and of his observations from his examination of the patient, and in giving his opinion he may testify not only as to what he observed but also as to what the patient told him about present symptoms. He may not give in evidence statements of the patient with respect to his past physical condition, circumstances surrounding the injury, or the manner in which the injury was received. [Corbett v. Terminal Railroad Assn. of St. Louis, 336 Mo. 972, 82 S. W. (2d) 97.]

"But it is said that, if the attendance of the physician is for the purpose of preparing himself as a witness in a case then pending, or expecting to arise, different considerations enter, for, in that instance, there will stand a temptation to falsify, or at least magnify the true condition." [Coghill v. Quincy, O. & K. C. Ry. Co., 206 S. W. 912, l. c. 913.]

In this case, Dr. Miller testified that he examined the respondent to determine his physical condition and that the examination was not necessarily for the purpose of enabling him to testify in this case. But, regardless of this statement, we cannot hold that this is reversible error because no such objection was made to his testimony.

We have come to the conclusion that there was no error in the testimony given by Dr. Miller, and the appellant's contention on this point is overruled.

■ III. The appellant's last assignment of error is that the verdict is excessive.

It is the appellant's contention that the verdict should not be over $10,000, and cites Fitzsimmons v. Missouri Pacific Railroad Co., 294 Mo. 551, 242 S. W. 915, and Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S. W. (2d) 666. However, in this case the respondent's loss was more than his foot and part of his leg. In addition, there was a shrinkage or atrophy of the amputated stump, he was highly nervous, there was tenderness in the region of his thighs, he sustained injuries in the lumbar and left sacroiliac areas, and the X-ray showed evidence of a fracture or dislocation at the sacio-cocygeal joint. We are of the opinion that the verdict of the jury was not excessive.

Finding no reversible error in the record, the judgment of the trial court should be affirmed. It is so ordered. All concur.