But there are certain facts and circumstances which do tend to support plaintiff's claim that she was both the innocent and injured party. For instance, defendant says that their differences arose over the children; that he tried to correct the children and plaintiff objected. The facts are that plaintiff's daughters by her previous marriage had married and moved from the home in 1945—five years previous to the year in which three of the separations took place. Then again, defendant testified that plaintiff "just kept running off" although he treated her with kindness and affection. This is difficult to understand. Why would a mother, time and time again, leave the home which her earnings had helped acquire unless she had good cause to do so?

The exhaustive brief of defendant's able counsel closes with this graphic language: "On every issue where credibility could be a determining factor, Dob Kinder stands to be believed and she stands unworthy of belief. Moreover, he was a kind and affectionate husband and father. He was forgiving, even after being stabbed nigh unto death. On every occasion where we catch one glimpse of this man, love and affection radiates. He wanted a good home." A careful study of the evidence disclosed in the transcript does not convince us that this is true.

■■ There is an irreconcilable conflict in the testimony, and this case, in our opinion, falls within the rule announced many times by our appellate courts that, in divorce suits, great deference should be paid to the finding of the trial court. In this instance, the trial judge was one possessed of vast experience. The parties were before him. He observed their conduct and demeanor on the witness stand. He was in a much better position to determine the truth or falsity of their testimony than is this court. We have only the printed transcript before us. We defer to the conclusion reached by the learned trial judge and affirm the judgment.

ANDERSON, P. J., and BENNICK, J., concur.

FRY

v.

### WAGNER BROS. MOVING & STORAGE CO., Inc.

No. 28925.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

Motion for Rehearing or to Transfer to Supreme Court Denied May 17, 1954.

Correnti, McKee, Rosenblum, FitzGibbon & Goldenhersh, Stanley M. Rosenblum, Merle L. Silverstein, St. Louis, for appellant.

Fred B. Whalen and Warren Grauel, St. Louis, for respondent.

BROADDUS, Special Judge.

In this suit plaintiff seeks to recover the value of certain household goods which were destroyed by fire after being stored with defendant. Judgment went for defendant in the circuit court and plaintiff appealed.

The petition alleged that the articles were destroyed "by virtue of the carelessness and negligence" of defendant. The parties waived a jury and submitted the cause to the court upon the following stipulation of facts:

"The plaintiff Nat Fry is a resident of St. Louis County, Missouri. The defendant Wagner Bros. Moving and Storage Co., Inc. is a Missouri corporation engaged in the business of storing furniture and household goods for a profit. On or about March 5, 1946, Nat Fry entered into a contract of bailment with the Wagner Bros. Moving & Storage Co., Inc., all the terms and conditions of which contract are set forth in the warehouse receipt hereinafter referred to, whereby he stored certain articles of household goods for a consideration with the defendant. Pursuant to the Uniform Warehouse Receipts Act, RSMo 1949 [V.A.M.S.] Sec. 406.010, et seq., the defendant issued a warehouse receipt, incorporated herein and marked Plaintiff's Exhibit 'A'. Under the terms of said receipt defendant is not an insurer of plaintiff's said goods. The items listed in said warehouse receipt were those actually stored; the warehouse receipt is genuine and valid and expresses the entire agreement between the parties. No question is raised by either party as to its validity, it being stipulated said warehouse receipt conforms with RS Mo 1949, [section] 406.010 et seq., which statute was in full force and effect at the time of said contract of bailment and is hereby incorporated by reference and made a part of this record. The warehouse of defendant was not of fireproof construction either on March 5, 1946, or at any time thereafter, nor does plaintiff contend that any representation in this regard was made to him by defendant or any of its officers, agents or employees. On June 29, 1950, in the very early A.M. hours, a fire of unknown origin destroyed defendant's warehouse and plaintiff's said goods in the defendant's warehouse; subsequent thereto, proper demand by plaintiff for the return of said items stored was made, and by virtue of their prior destruction as aforesaid defendant was unable to return said items. The defendant warehouse corporation employed no night watchman, nor was the warehouse equipped with any automatic sprinkler system either at the time of the bailment, March 5, 1946, or at the time of the fire of unknown origin, June 29, 1950. No night watchman or sprinkler system was required at any time herein referred to either by the Uniform Warehouse Receipts Acts, RSMo 1949, Sec. 406.010, et seq., or any other state or city legislative enactment. Neither the plaintiff nor the defendant has any evidence as to the origin of the fire, nor does the plaintiff have evidence of any specific acts of negligence of the defendant. The agreed market value of the goods of plaintiff so destroyed by said fire is $1,850.00.

"It is further stipulated and agreed that this case is submitted upon the pleadings and this statement of facts and that neither plaintiff or defendant will offer any oral or written testimony or evidence or alter in any respect this statement."

The instant case is governed by the recent holding of this court in the case of Gutknecht v. Wagner Bros. Moving & Storage Co., 266 S.W.2d 19. The fire which destroyed plaintiff's goods also de-

stroyed the electric range belonging to Mr. and Mrs. Gutknecht.

Plaintiff's first point is that the trial court erred in holding that plaintiff failed to make a *prima facie* case, "because the case at bar properly invokes the doctrine of *res ipso loquitur,* which requires submission of plaintiff's case to a jury; therefore, under the stipulation of the parties, judgment for plaintiff was mandatory."

In the Gutknecht case we said this:

"It is contended that the occurrence of a fire gives rise to the res ipsa loquitur doctrine. This, however, is not the rule in Missouri for the cause of fires is generally unknown and they commonly occur where care has been exercised as well as where care is wanting. Therefore, when a fire originates in a warehouse, that alone is not evidence that it was caused by any negligence on the warehouseman's part. Kansas City Stock Yards Co. v. A. Reich & Sons, Mo.Sup., 250 S.W.2d 692; Kapros v. Pierce Oil Corp., 324 Mo. 992, 25 S.W. 2d 777, 78 A.L.R. 722; Hendricks v. Weaver, Mo.Sup., 183 S.W.2d 74."

We could not have held otherwise. This because res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence. McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641. In Pointer v. Mountain Ry. Const. Co., 269 Mo. 104, 189 S.W. 805, 810, L.R.A. 1917B, 1091, our Supreme Court said the doctrine of res ipsa loquitur applies, outside of carrier and passenger cases, only " 'where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of person or property and is so tortious in its quality as, *in the first instance at least, to permit no inference save that of negligence * * *.' "* (Emphasis ours.)

 The case upon which plaintiff's able counsel chiefly rely is that of Walters v. Adams Transfer & Storage Co., 235 Mo. App. 713, 141 S.W.2d 205. There the court applied the doctrine of res ipsa loquitur to fire originating in the dual wheels of a semi-trailer en route from Chicago to St. Louis. After the fire was discovered by the drivers, but before it could be extinguished by them, it spread to the trailer, resulting in the latter's destruction. In applying res ipsa loquitur, the Court states, 141 S.W.2d loc. cit. 208: "This court judicially knows the tires would not have bursted into flame unless they had been subjected to intense heat; and as there is no reason to believe the heat was engendered by any agency save friction, the jury was not bound to believe the drivers discovered the condition as soon as they should have discovered it in the exercise of due care." Thus, in that case an inference of negligence could easily be drawn. That is not true in the instant case. We rule the point against plaintiff.

Plaintiff's remaining contention is that the Uniform Warehouse Receipts Act, Section 406.010 et seq. RSMo 1949, V.A.M.S., places the burden of proof upon the warehouseman to show legal excuse for failure to redeliver the bailed property upon demand by the bailor, and that the court erred in failing to hold that the burden of proof "was not met by the mere showing of destruction of the property by fire of unknown origin."

The answer to plaintiff's contention is— that he sued in tort. In the Gutknecht opinion we quoted with approval from the case of Traders Compress Co. v. Precure, 107 Okl. 191, 231 P. 516, 523, as follows:

"We are not in accord with the views of those courts holding that where recovery is sought, based on the negligence of the warehouseman, the statute has changed the rule as to the burden of proof, for the reason that the statute under consideration deals only with the rights, duties, and liabilities of the parties under the contract of bailment as embodied in the warehouse receipt. The act does not deal with the burden of proof in actions sounding in tort, or with the law of negligence, and nowhere evinces an intention on the part of the Legislature to in any manner modify the rules at common law in cases founded on negligence."

**362**

The Precure case, supra, was remanded for a new trial. Prior to the second trial the plaintiff filed an amended petition based solely upon the contract of bailment. When the case reached the Oklahoma Supreme Court the second time, 140 Okl. 40, 282 P. 165, 71 A.L.R. 759, the court stated that both parties claimed that the former opinion was favorable to their respective contentions. The court, after quoting from its first opinion, said:

"We interpret the above language to mean just what it says; that is, if the bailor sues the warehouseman in tort and alleges the warehouseman was negligent or at fault in the loss and destruction of the goods, the bailor must sustain his case throughout by the burden of proof. On the other hand, if the bailor sues on contract, alleging the delivery of the goods to the warehouseman, thereafter makes a lawful demand for the return of the goods, and the warehouseman refuses or fails to return the said goods, the warehouseman must then, in order to legally excuse himself, show that the said goods were lost or destroyed without his fault or negligence." 282 P. at page 167.

In support of his position plaintiff relies upon the case of Denning Warehouse Co. v. Widener, 10 Cir., 172 F.2d 910, 13 A.L.R. 2d 669. His brief quotes extensively from that opinion. We cited it in our Gutknecht opinion. An examination of the Denning Warehouse Co. case reveals that the plaintiff therein alleged in his petition the bailment of broom corn in the Company's warehouse, the payment of the charges, demand and refusal of redelivery, and prayed for damages for its value. Thus plaintiff sued upon the contract of bailment. Among the decisions the court cites in support of its holdings are the Oklahoma Precure case, supra, and Alabam's Freight Co. v. Jiminez, 40 Ariz. 18, 9 P.2d 194, 195. In the latter case the court said: "The question is one of first impression in this jurisdiction, and after considering all of the authorities and the reasoning of the cases, we are of the opinion that the rule so clearly enunciated in the late case of Traders' Compress Co. v. Precure, 140 Okl. 40, 282

P. 165, 167, 71 A.L.R. 759, is the better sustained by reason." It is apparent that the Denning Warehouse Co. case, supra, does not aid plaintiff.

 Under the Gutknecht holding and the cases above referred to it is clear that where recovery is sought on the contract of bailment the burden of proof is upon the warehouseman, but where the action is based on negligence, as here, the rule is otherwise.

The judgment is affirmed.

ANDERSON, P. J., and BENNICK, J., concur.