Jeanette WELLS, Plaintiff-Respondent,

v.

Geraldine ASHER, Defendant-Appellant.

No. 7448.

Springfield Court of Appeals.

Missouri.

Dec. 29, 1955.

Burden & Shortridge, Joplin, for defendant-appellant.

Dalton DeShazer, Joplin, for plaintiff-respondent.

STONE, Judge.

In this jury-tried suit, defendant appeals from the judgment for $1,085 obtained by plaintiff for damage to her six-room modern frame rental house at 3305 East 13th Street in Joplin, Missouri, resulting when a westbound Buick automobile driven by defendant left the paved roadway, crossed a shallow drainage ditch some twelve to eighteen inches in depth on the right-hand or north side of the road, traveled "half a block"

through the wide yard of the Klimpt home just east of plaintiff's property, ran over a sapling in the Klimpt yard and through a four-foot or five-foot woven wire line fence, tore down two eight-inch concrete pillars on the east side of a ground-level porch on plaintiff's house some twelve to fourteen feet north of the roadway, went completely through the east wall of a bedroom and, having demolished the furniture in that room, came to a stop partially through the west wall of the room. The accident occurred about 1:00 p. m. on October 7, 1953. It was a clear day, the roadway was dry and unobstructed, and there is no suggestion that any other vehicle contributed to cause the occurrence.

On this state of facts, it would seem that plaintiff clearly would be entitled to rely (as she did) upon the res ipsa loquitur doctrine, for we find repeated holdings, either expressly or in effect, that the unusual movement of a motor vehicle in running off a highway ordinarily will justify invocation of that doctrine.[1] However, emphasizing the established principle that, where plaintiff's own evidence points out and reveals the specific act of negligence causing the injury or damage complained of, recovery may not be had on the res ipsa loquitur doctrine,[2] defendant asserts that the instant case was submitted erroneously on that doctrine by plaintiff's verdict-directing instruction 1 "for the reason that plaintiff explained by her evidence just how the accident happened."

Elmer Junior Davis, a witness for plaintiff living on the south side of 13th Street "cater-cornered" across the street from (and thus southeast of) plaintiff's house and directly opposite the Klimpt home, was entering an automobile in his driveway preparing to return to work after lunch, when he "heard a noise, looked up and saw" defendant's automobile. Apparently because Davis testified that "I didn't see nobody in the car" and conceded that it "just looked like a driverless car," able and ingenious counsel for defendant insist that "the evidence construed in the light most favorable to the plaintiff can lead to only two possible conclusions," i. e., either "that the defendant voluntarily relinquished control of the wheel of her car" or "that defendant lost control of the car through no fault of her own." Defendant's counsel argue that, if from Davis' testimony "the inference is drawn that the defendant voluntarily leaned over to pick up something from the floor of the car or for some other reason voluntarily relinquished control of the wheel, the plaintiff by her own evidence has shown specific negligence, that is, she has proved just why the accident occurred," and thus was not entitled to a res ipsa submission.

Although we recognize the general rule that a plaintiff is bound by his or her evidence in a res ipsa case as in an ordinary negligence action [Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97, 100–101(3); Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, 25(5)], we are by no means satisfied that the testimony of witness Davis, fairly considered as a whole, would justify a finding that defendant, alone in her automobile, was in such position as to demonstrate that she had "voluntarily relinquished control of the wheel." Even though Davis thought that defendant's automobile was traveling

1. Triplett v. Beeler, Mo., 268 S.W.2d 814, 817–818(3); Lindsey v. Williams, Mo., 260 S.W.2d 472, 474(1), certiorari denied 347 U.S. 904, 74 S.Ct. 428, 98 L.Ed. 1063; Dodson v. Maddox, 359 Mo. 742, 223 S.W.2d 434, 438(7); Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471, 477 (12); Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1002–1003(1, 3); Murray v. St. Louis Public Service Co., Mo. App., 201 S.W.2d 775, 778–779(1); Adams v. LeBow, 236 Mo.App. 899, 160 S.W.2d 826, 828(3); Vesper v. Ashton, 233 Mo.App. 204, 118 S.W.2d 84, 87(2).

2. Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S.W.2d 749, 752–753 (4); Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599, 603(9); Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, 25(4, 5); Elder v. Phillip, Mo.App., 252 S.W.2d 656, 658(1); Oblamski v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 344, 347(4).

"not too awful fast" (no speed in miles per hour was estimated in plaintiff's case), it is apparent that his view of the automobile was a fleeting one, for, when asked on cross-examination whether "it looked like an empty car," he replied "the best I remember, it happened so fast," and he summed up his testimony by stating that "all I know, I looked up at the car, seen the car and I went down there" to plaintiff's house. Furthermore, defendant's automobile ran diagonally across a drainage ditch some twelve to eighteen inches deep, leaving tracks which, as the investigating police officer (a witness for plaintiff) said, showed "some deviation from a straight line as they passed across the ditch"; and, although the sides of the ditch had "a gradual slope," the jury reasonably might have inferred from the evidence that, as the automobile crossed this ditch *immediately before* witness Davis looked (as we shall note shortly), defendant might have been thrown from her normal or customary position under the steering wheel into some position which would have made it more difficult or impossible for Davis to have seen her.

But, for even more compelling reasons, we are convinced that plaintiff was not precluded from a res ipsa submission. *Factually*, defendant's assertion that plaintiff "has proved just why the accident occurred" is not supported by the transcript before us. For, this contention is bottomed on a loose and inaccurate reference to witness Davis as "the only eyewitness who saw (defendant's) automobile *leave the road*," whereas the record shows that on direct examination Davis testified that he "heard a noise, looked up and saw a car *going into the (Klimpt) yard across the street*," that in the first question on cross-examination defendant's counsel elicited an affirmative answer to the question, "you say you saw this car *going through the yard*," and that on redirect examination Davis said that "all I seen was the car *as it was going across the yard*." Thus, again fairly considered as a whole, the testimony of witness Davis demonstrates that he did *not* see defendant's automobile at or prior to the time it left the paved roadway, and that he thus was not qualified to say, and did not undertake to say, what had caused defendant's automobile to leave the road and start on its off-the-highway course, some two hundred fifty feet in length, which terminated in the bedroom of plaintiff's home. In short, we cannot find from the testimony of witness Davis (nor from anything in plaintiff's case) "just why the accident occurred."

■ *Legally*, defendant's argument that plaintiff was precluded from a res ipsa submission by proof of specific negligence is, under the facts of the instant case, utterly self-destructive. For, it is firmly-established in this jurisdiction that, "even though the plaintiff's evidence may tend to show the specific cause of the accident, he will nevertheless not lose the benefit of the doctrine, nor be deprived of the right to rely upon it in the submission of his case, if, after his evidence is in, 'the true cause is still left in doubt or is not clearly shown.'"[3] Defendant's contention in the case at bar is *not* that plaintiff's evidence definitely showed the precise cause of the occurrence under consideration, but rather that such evidence "can lead to only *two possible conclusions*," i. e., *either* that defendant "voluntarily relinquished control" *or* that she "lost control * * * through no fault of her own." Defendant thus conceding that plaintiff's evidence afforded a basis for different conclusions, the cause of accident obviously remained in doubt at the close of plaintiff's case and she did not lose her right to rely on the res ipsa loquitur doctrine. Williams v. St. Louis Public Service Co., supra, 253 S.W.2d loc. cit. 100–102; Grace v. St. Louis Public Service

---

3. Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, 510(7); White v. St. Louis Public Service Co., 364 Mo. 111, 259 S.W.2d 795, 799(6); Burr v. Kansas City Public Service Co., Mo., 276 S.W.2d 120, 123(1). See also Triplett v. Beeler, supra, 268 S.W.2d loc. cit.

818(4); Hall v. St. Louis Public Service Co., Mo., 266 S.W.2d 597, 600(8); Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S.W.2d 130, 133(2); Quadlander v. Kansas City Public Service Co., 240 Mo.App. 1134, 224 S.W.2d 396, 399 (2); annotation 33 A.L.R.2d 791, 795.

Co., Mo.App., 263 S.W.2d 866, 870. Plaintiff's verdict-directing instruction 1 is not vulnerable to the only attack made upon it, namely, that plaintiff was precluded from a res ipsa submission because she "explained by her evidence just how the accident happened."

Defendant's second complaint is that the trial court erred in failing to direct a verdict for her because "all of the evidence showed that the casualty in question resulted from defendant's unanticipated physical impairment and therefore she was not guilty of any actionable negligence." Her uncorroborated explanation of the accident was that, as her west-bound automobile, traveling at a speed of twenty to twenty-five miles per hour, was entering the second or west portion of a "gentle" S-curve a very short distance (the exact distance is not shown) east of the point where it left the paved roadway, she suddenly and without warning "completely blanked out," and that she remembered nothing thereafter until "they was getting me out of the car." But, as in Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303, 305(5), "(t)he circumstances of the instant case * * * do not call for comment" concerning the general rule, on which defendant here relies, that "a motorist stricken by paralysis, overcome by poisonous gas, seized by a fit, or falling asleep, who still continues to drive and, while unconscious, causes injury to another cannot be held liable therefor unless he was reasonably aware that he was about to lose consciousness to the extent that a person of ordinary prudence would not attempt to continue driving." Blashfield's Cyclopedia of Automobile Law and Practice (Perm.Ed., 1948), Section 656.

For, the prima facie case made (as we have found) by plaintiff under the res ipsa loquitur doctrine—"a rule of evidence peculiar to the law of negligence, which relieves the plaintiff, in a case to which the doctrine applies, of the necessity of specific proof of definite acts or omissions constituting negligence" [Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, 509(1)]—raised a substantial factual inference of defendant's negligence constituting evidence which did not disappear upon introduction of defendant's exculpatory evidence,[4] but which abided to the end of the trial, taking plaintiff's case to the jury and warranting, although not requiring, a finding of defendant's negligence even though she presented evidence tending to exonerate her.[5] Defendant's theory of the case was for the jury under proper instructions;[6] and, such theory having been submitted in defendant's instruction 4 given by the court, we are not at liberty to disregard the finding of the jury thereupon.

The judgment should be and is affirmed.

McDOWELL and RUARK, JJ., concur.

4. Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W.2d 163, 169(10), and cases there cited; Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 460 (10), 129 A.L.R. 829; Conduitt v. Trenton Gas & Electric Co., supra, 31 S.W.2d loc. cit. 25.

5. Frazier v. Ford Motor Co., Mo., 276 S.W.2d 95, 102(9); Turner v. Missouri-Kansas-Texas R. Co., supra, 142 S.W.2d loc. cit. 460(9), 129 A.L.R. 829; Evans v. Missouri Pac. R. Co., 342 Mo. 420, 116 S.W.2d 8, 9(2); Pandjiris v. Oliver Cadillac Co., 339 Mo. 711, 98 S.W.2d 969, 974(11); State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S.W.2d 638, 641; Duncker v. St. Louis Public Service Co., Mo. App., 241 S.W.2d 64, 67(4, 5); Henneke v. Gasconade Power Co., 236 Mo.App. 100, 152 S.W.2d 667, 672(3); Walters v. Adams Transfer & Storage Co., 235 Mo. App. 713, 141 S.W.2d 205, 207(2).

6. Whitaker v. Pitcairn, supra, 174 S.W.2d loc. cit. 168(5); Tabler v. Perry, supra, 85 S.W.2d loc. cit. 478(13); Mackler v. Barnert, Mo.App., 49 S.W.2d 244, 246 (2).